**2009 BNH 025**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                         Bk. No. 08-12074-JMD
                                                                                                               Chapter 7
Cheri C. Valentine,
              Debtor

*Bradley M. Lown, Esq.*
*Coughlin, Rainboth, Murphy & Lown, PA*
*Portsmouth, New Hampshire*
*Attorney for Debtor*

*James S. LaMontagne, Esq.*
*Sheehan, Phinney, Bass + Green, PA*
*Manchester, New Hampshire*
*Attorney for Chapter 7 Trustee*

## MEMORANDUM OPINION

### I.  INTRODUCTION

The chapter 7 trustee in this case, Bruce A. Harwood (the "Trustee"), filed an objection to the Debtor's amended exemptions (Doc. No. 20) (the "Objection"). The Trustee claims that the Debtor's legal basis for exempting a $50,824 disability insurance settlement is improper and that the Debtor scheduled her jewelry in bad faith because she later increased her claimed exemption in the jewelry from $1,000 to $5,520. The Court holds that: (1) the disability settlement is property of the estate because the Debtor's chosen exemption does not apply and the settlement is not otherwise excluded from the estate; and (2) the Debtor did not schedule her jewelry in bad faith because her basis for originally valuing the jewelry was not unreasonable.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. BACKGROUND

The Debtor filed her chapter 7 petition on July 24, 2008.[1]  In her original schedules, she listed a Compas Group Option Plan valued at $22,500 on schedule B and claimed an exemption on schedule C under NH RSA 304-A:25, II(c).  She also listed jewelry valued at $1,000 and claimed an exemption under NH RSA 511:2, XVII and XVIII.  Her original schedule I also indicated that she receive monthly payments of $2,602 under a long-term disability insurance policy from Sun Life Financial.

On August 28, the Debtor testified at her § 341 meeting.[2]  At that meeting the Trustee allegedly asked about the jewelry the Debtor was wearing and if she could provide him with an inventory and statement of value for all of her jewelry, which she agreed to do.  The Trustee continued the § 341 meeting to October 14, so the Debtor could provide the requested documents.  The Trustee erroneously filed minutes on August 29 indicating that the § 341 had been concluded.  The Debtor later provided all the requested documents and the § 341 meeting was actually concluded.

---

[1] All dates refer to 2008 unless otherwise indicated.

[2] In this opinion the terms "Bankruptcy Code," "section" and "§" refer to title 11 of United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8.

On September 29, the Debtor's counsel contacted the Trustee to notify him that the Debtor recently settled a claim under a long-term disability insurance contract and received a lump sum of $50,824.  The Debtor also later provided documents about the settlement to the Trustee.  On November 17, the Debtor filed amendments to her schedules B, C, and I to add the disability settlement and exempt it under NH RSA 167:25 and to increase both the value and exempted amount of her jewelry from $1,000 to $5,520.  The Trustee then filed his objection on December 18, challenging the legal basis for the cited exemptions for the Compas Group Option Plan and the disability settlement.  He also argued that the Debtor acted in bad faith by failing to list the disability settlement lump sum on her original schedules and by amending schedule C to increase her claimed exemption for the jewelry.

The Court held an evidentiary hearing at which the Debtor and the Trustee submitted exhibits.  The Court also heard testimony from Amy Hall, a senior claims administrator for Sun Life Financial, the insurer of the Debtor's long-term disability policy, regarding the timing of the settlement discussions between Sun Life and the Debtor.  The Trustee argued that the Debtor knew about the disability settlement at the time she filed for bankruptcy and should have listed it on her original schedules in some form as contingent.  The Debtor also testified on her own behalf regarding how she initially valued the jewelry before listing and exempting it on her original schedules and why she decided to increase her exemption.  She explained that while completing her original schedules, her attorney told her to provide a ballpark figure for the jewelry, using a liquidation value.

At the hearing, the Trustee dropped his objection regarding the Compas Group Option Plan exemption because his objection was more than 30 days late under Federal Rule of

Bankruptcy Procedure 4003, as the deadline to object began no later than the continued § 341 meeting scheduled for October 14, and the Trustee did not object until December 18.  Thus, the Court granted the Debtor's motion to overrule the Trustee's objection to the option plan exemption.  The Debtor also moved to dismiss the Trustee's objection to her exemption for the disability settlement lump sum on bad faith grounds.  Based on the evidence at the hearing, the Court granted the Debtor's motion and held that the Debtor did not act in bad faith by failing to list the disability settlement on her original schedules.  Although the Debtor had met with Sun Life representatives regarding a possible settlement in mid-August, after she filed for bankruptcy, she only expressed some passing interest in settling and was less than excited about the amount offered.  But she did not accept Sun Life's settlement proposal until early September, after the first § 341 meeting.

At the conclusion of the hearing, the Court took two remaining issues under submission: (1) the legal issue of whether the Debtor properly claimed an exemption in the disability insurance lump sum, and (2) the factual issue of whether the Debtor acted in bad faith by amending her schedules to increase the amount of her jewelry exemption.  As the objecting party, the Trustee has the burden of proving that the Debtor is not entitled to the claimed exemptions.  Fed. R. Bankr. P. 4003(c).

### III.  DISCUSSION

#### A.  The disability settlement

The Trustee argues that the Debtor's claimed exemption under NH RSA 167:25 does not apply to the Debtor's private insurance disability settlement because the statute only covers

public assistance. The Debtor thinks otherwise. She argues that RSA 167:25 applies because her disability settlement is the functional equivalent of public assistance. Alternatively, she argues that the disability settlement was never property of the estate under § 541 because her right to receive the lump sum did not ripen until she met with Sun Life Financial regarding the possible settlement in August or September, after she filed her bankruptcy petition. She also argues that the lump sum settlement does not transform something that was otherwise exempt, because it was payable over time in monthly installments, to something that is not exempt. Finally, she contends that because the disability lump sum does not fall within the types of property listed in § 541(a)(5), the lump sum is not property of the estate. The Debtor therefore believes that the proceeds are either exempted or excluded from the bankruptcy estate.

### 1. Insurance contracts as property of the estate

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property of the estate also includes "[p]roceeds . . . or profits of or from property of the estate." Id. § 541(a)(6). Courts generally agree that insurance contracts in which the debtor has an interest at the time the petition is filed constitute property of the estate for purposes of § 541(a). Stinnett v. Laplante (In re Stinnett), 465 F.3d 309, 312 (7th Cir. 2006) (citing cases). "Further, payments from insurance policies in which the debtor had a prepetition interest, to the extent that the debtor has or would have a right to receive and keep those payments when the insurer paid on a claim, are 'proceeds' of estate property and thus also property of the estate." Id. at 312-313; see also Tringali v. Hathaway Machinery Co., Inc., 796 F.2d 553, 560 (1st Cir. 1986) ("language, authority, and reason all

indicate that proceeds of a liability insurance policy are 'property of the estate'"). As the Fifth Circuit explained:

> The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.

Houston v. Edgeworth (In re Edgeworth), 993 F.2d 51, 55-56 (5th Cir. 1993). "The central question when determining whether insurance proceeds associated with a policy are property of the bankruptcy estate is whether, in the absence of the bankruptcy proceeding, the proceeds of the policy would belong to the debtor when the insurer pays a claim. Unsecured Creditors Disbursement Comm. v. Antill Pipeline Constr. Co., Inc. (In re Equinox Oil Co., Inc.), 300 F.3d 614, 618 (5th Cir. 2002) (citing Edgeworth). In this case, there is no doubt that the Debtor was entitled to the proceeds of the disability policy on the petition date. Therefore, the policy proceeds are property of the bankruptcy estate.

### 2. Removing property from the estate

Property of the bankruptcy estate can be removed from the estate in one of three ways: (1) the debtor exempts it on her schedules under § 522; (2) the trustee abandons it under § 554; or (3) the property is excluded by statute under the Bankruptcy Code or other federal law. In addition, property acquired postpetition by the debtor is not property of the chapter 7 bankruptcy estate; it remains the separate property of the debtor. See, e.g., Bell v. Bell (In re Bell), 225 F.3d 203, 215 (2d Cir. 2000).

#### a. Exemption under NH RSA 167:25

6

On her amended schedules B and C, the Debtor listed the Sun Life Financial disability lump sum settlement for $50,824 and claimed an exemption under NH RSA 167:25. NH RSA 167:25 provides that "[a]ll assistance given hereunder shall be inalienable by any assignment or transfer and shall be exempt from levy or execution under the laws of this state." The "hereunder" in RSA 167:25 refers to chapter 167, titled "Public Assistance to Blind, Aged, or Disabled Persons, and to Dependent Children." The New Hampshire legislature used the adjective "public" to describe the type of assistance exempt from levy or execution. While a statute's title is not conclusive of its interpretation, it significantly indicates the legislature's intent in enacting the statute. Greenland Conservation Comm'n v. New Hampshire Wetlands Council, 154 N.H. 529, 534 (2006). The Court believes that chapter 167's title and the nature of the various sections within chapter 167 provide strong evidence that the New Hampshire legislature meant to give the exemption in RSA 167:25 only to those who receive public assistance in the form of welfare, food stamps, etc. Accordingly, the Court interprets RSA 167:25 as only exempting certain public assistance benefits received under chapter 167.

At the hearing, the Debtor acknowledged that RSA 167:25 technically did not apply but she argued that her disability settlement was the functional equivalent to public assistance. The Court does not agree. A disability insurance lump sum settlement under a private contract paid through premiums is a private benefit and not the type of public assistance contemplated by RSA 167:25. In addition, the insurer, not the state, determined the Debtor's eligibility for disability insurance payments. Although § 522(d)(10) would exempt this type of disability benefit, when she filed her petition the Debtor chose the state exemption scheme.[3] A debtor's exemptions are

---

[3] New Hampshire was an opt-out state until 1997, forcing New Hampshire debtors before then to choose the state exemptions. The State now allows debtors to choose between the federal or state

determined when the petition is filed. In re Friedman, 38 B.R. 275, 276 (Bankr. E.D. Pa. 1984). Thus, the Debtor's claim of an exemption under RSA 167:25 fails because that provision of state law is not applicable to benefits under a private disability insurance contract.

### b. Converting the disability insurance payments to a lump sum

The Debtor also argues that her entitlement to the disability settlement was triggered postpetition, and, as such, should remain hers as property acquired postpetition. Converting a property interest into some other form does not change the interest's character. Thus, exempted property will not lose its exempt character if the debtor converts it from one form to another. See In re Williams, 171 B.R. 451 (D.N.H. 1994) (exempted lump sum workers compensation settlement extended to Corvette purchased by the debtor with the settlement proceeds). Conversely, if the property was property of the estate and not exempted, changing it to some other form—a lump sum settlement instead of monthly payments—will not change the property's non-exempt character. See Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318 (1st Cir. 2008) (proceeds from the sale of a debtor's home retain the exempt status of the home itself); see also Payne v. Wood, 775 F.2d 202, 204 (7th Cir. 1985) ("Once property enters the estate, it does not matter whether the property changes form."); Bradt v. Woodlawn Auto Workers, F.C.U., 757 F.2d 512, 515 (2d Cir. 1985) ("The conversion in form of property of the estate does not change its character as property of the estate.") (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 368 (1977)). Therefore, although the Debtor received the disability settlement postpetition, the settlement is not exempt and is property of the bankruptcy estate.

---

exemptions. See 1996 N.H. Laws Ch. 151 (H.B. 1488). But debtors cannot cherrypick among the various state and federal exemptions—they may only choose one exemption scheme. See 11 U.S.C. § 522(b)(1).

### c. Excluding the disability settlement under § 541(a)(5)

Finally, the Debtor argues that her disability settlement was excluded from the bankruptcy estate by statute under § 541(a)(5). Section 541(a)(5) lists property included in the estate, not excluded. But the Debtor argues that because the disability settlement does not fall within the types of property listed in subsections (A), (B), and (C), by negative implication it must be excluded. The Court disagrees.

Section 541(a)(5) includes in the estate

> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date--
> 
> (A) by bequest, devise, or inheritance;
> 
> (B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or
> 
> (C) as a beneficiary of a life insurance policy or of a death benefit plan.

11 U.S.C. § 541(a)(5). Although disability insurance is not included, the Court declines to take that omission as a sign Congress meant to exclude it. The negative pregnant rule of statutory interpretation ordinarily advises that when Congress expressly lists what is within the scope of a particular statute, it intends to exclude items not listed. See McKinnis v. McKinnis (In re McKinnis), 287 B.R. 245, 254 (Bankr. E.D. Mo. 2002). But that rule has little application where Congress expressly provided its intent to exclude certain items by listing them in the same section—under § 541(b)—and where Congress otherwise intended that courts construe property of the estate broadly. Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.), 482 F.3d 15, 17 (1st Cir. 2007). Therefore, the Debtor's disability settlement is not excluded under § 541(a)(5).

### d. Exclusions under nonbankruptcy federal law

A debtor's property interests may also never come into the bankruptcy estate at the outset because some other nonbankruptcy federal law excludes it. The Debtor has not identified, and the Court is unable find, any exclusion for the Debtor's disability settlement under applicable nonbankruptcy federal law.

Under the Bankruptcy Code, some employee benefits may be excluded from property of the estate under § 541(b). See, e.g., 11 U.S.C. § 541(b)(7) (certain ERISA plans, deferred-compensation plans, and tax-deferred annuities). Section 541(c) also excludes from the estate the debtor's beneficial interest in a trust that has a restriction on transfer—an anti-alienation provision—enforceable under "applicable nonbankruptcy law," such as ERISA-qualified pension plans. 11 U.S.C. § 541(c)(2); see Patterson v. Shumate, 504 U.S. 753 (1992).

Other nonbankruptcy federal law may also have restrictions that exclude certain property interests or benefits from execution, attachment, levy, or from becoming property of the bankruptcy estate. See 42 U.S.C. § 407(a) (social security disability benefits); Carpenter v. Ries (In re Carpenter), 408 B.R. 244 (B.A.P. 8th Cir. 2009) (§ 407 of the Social Security Act excludes social security benefits from a debtor's bankruptcy estate from the outset); see also 38 U.S.C. § 5301 (veteran's benefits); 26 U.S.C. § 6334 (unemployment benefits, annuity and pension payments, service-connected disability payments, and certain public assistance payments). None of these statutes, however, apply to the Debtor's private disability insurance benefits that she received from Sun Life Financial.

In the end, debtors bear the burden of listing and claiming their exemptions. Fed. R. Bankr. P. 4003(a). The Debtor did not meet that burden here because the exemption she chose

was not applicable and no other provision of the Bankruptcy Code or nonbankruptcy federal law excludes her private disability benefits.  Consequently, the Debtor's disability settlement is not exempt or excluded and is property of the estate to be administered by the Trustee.

### B. The jewelry

The Debtor fairs better with her jewelry exemption.  The Trustee argues that the Debtor's amendment indicates her bad faith because she never properly investigated the value of the jewelry before listing it on her original schedules and that the stark difference between the original amount ($1,000) and the amended amount ($5,520) suggests that the Debtor either knew or should have known that her jewelry was worth much more than the amount originally scheduled.  The Debtor testified that when she completed her original schedules, she was told by her counsel to value the jewelry using her best estimate, as if she were selling the items at a yard sale.  After the § 341 meeting, the Debtor provided the Trustee with an inventory of her jewelry, which totaled $5,520 by valuing the jewelry using the purchase price of each item.[4]  To determine the purchase prices of the jewelry, the Debtor looked at old receipts and also called her ex-husband to ask what he remembered paying for certain items because they were gifts.  The Debtor then amended her schedules B and C to increase the value of her jewelry to $5,520 and exempt that same amount.

Federal Rule of Bankruptcy Procedure 1009(a) permits a debtor to amend her schedules "as a matter of course at any time before the case is closed."  A bankruptcy court, however, has discretion to deny an exemption amendment where the amendment would prejudice creditors or where the debtor acted in bad faith or concealed assets.  Hannigan v. White (In re Hannigan),

---

[4] Debtor's Ex. 105.

409 F.3d 480, 481 (1st Cir. 2005). Courts have denied amendments where debtors intentionally undervalued their homes or other personnel property on their schedules in bad faith. See id. Bad faith is generally determined by examining the relevant surrounding circumstances and must be shown by clear and convincing evidence. In re Wunderlich, 369 B.R. 80, 84 (Bankr. D.N.H. 2007). It normally requires more than a mistake or inadvertence; there usually "must be some form of deception." Id. But courts have also held that debtors meet the bad faith standard when they act with reckless disregard for the accuracy of information contained in their schedules. In re Rolland, 317 B.R. 402, 415-16 (Bankr. C.D. Cal. 2004); see also Korte v. IRS (In re Korte), 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001) ("statements made with reckless indifference to the truth are regarded as intentionally false").

Bankruptcy courts are "entitled to insist upon filings and representations made in the utmost good faith." Hannigan, 409 F.3d at 483. As a result, debtors cannot turn their property exemptions into a game of "hide and seek" where the debtor "quietly retains all property that the trustee does not find and then moves to amend the exemption schedules when the trustee becomes aware of the property." In re Edmonds, 27 B.R. 468, 469 (Bankr. M.D. Tenn. 1983). Debtors therefore also have an ongoing duty of disclosure regarding the information in their schedules. In re Barrows, 399 B.R. 506, 511 (Bankr. D. Minn. 2009). And they have an "independent duty to provide accurate and complete information whether or not they have been assisted by counsel in preparing their schedules." Id.

The bankruptcy system imposes these duties on debtors because "the successful functioning of the bankruptcy [system] hinges both upon the bankrupt's veracity and his willingness to make a full disclosure. Neither the trustee nor the creditors should be required to

engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987) (quotations and citations omitted). Requiring debtors to give "an honest, conscious effort to prepare accurate, detailed and complete [s]chedules is not intended as a trap for the unwary or undue emphasis on technical compliance but, rather, as a reasonable quid pro quo." JP Morgan Chase Bank, N.A. v. Koss (In re Koss), 403 B.R. 191, 212 (Bankr. D. Mass. 2009) (quoting Guardian Indus. Prod., Inc. of Massachusetts v. Diodati (In re Diodati), 9 B.R. 804, 809 (Bankr. D. Mass. 1981)).

Applying those principles to this case, the Court finds that the Trustee has not met his burden of proving that the Debtor increased her jewelry exemption in bad faith. On similar facts, the bankruptcy court in Harker v. West (In re West), 328 B.R. 736 (Bankr. S.D. Ohio 2004), rejected similar arguments made by a chapter 7 trustee in a § 727 action. There, the trustee argued that the debtor must have known that her items of jewelry originally purchased for more than $30,000 had a value much greater than the $2,000 "pawnshop" value she put on her schedules. Id. at 750. The trustee also argued that the debtor's $2,000 valuation was so far off the mark that it had to be a knowing and fraudulent misrepresentation under § 727. Id. In response, the debtor asserted that she simply followed her counsel's instructions to list her jewelry at its pawnshop value. Id. The West court found the debtor's testimony credible even though her counsel's advice appeared to be based on his misunderstanding of the appropriate standard for valuing property listed in a debtor's schedules. Id. The court reasoned:

> While the caselaw is sparse on the subject, the majority, and better-reasoned, line of authority holds that personal property should be listed in the debtor's schedules at fair-market, rather than liquidation, or distressed-sale, value. But while [the debtor] may have been advised by her bankruptcy counsel to utilize a valuation standard that has not gained acceptance, the Court is not persuaded that she acted

13

>in bad faith by relying on his instruction to list her jewelry at its pawnshop, or liquidation, value.

Id. at 750-51 (footnote omitted).  The court therefore believed that the debtor did not knowingly or fraudulently undervalue her jewelry because, among other things, the difference between her $2,000 estimate and her expert's pawnshop value appraisal of $3,860 was not so pronounced as to indicate that her valuation estimate was fraudulent.  Id. at 751.

Here, the Court likewise finds the Debtor's testimony credible and that she did not act in bad faith by relying on her counsel's advice to schedule her jewelry using a liquidation value rather than the fair market value.  The question here is not which valuation method is correct but whether the debtor had any reasonable basis for choosing the one that she did.

For purposes of exemptions "value" means "fair market value as of the date of the filing of the petition." 11 U.S.C. § 522(a)(2).  The term "fair market value" is not defined by the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.  But courts normally agree that the law defines it as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction."  Black's Law Dictionary 1691 (9th ed. 2009); see also Society Hill at Merrimack Condo. Ass'n v. Town of Merrimack, 139 N.H. 253, 255 (1994) (defining fair market value as "the price which in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy, taking into account all considerations that fairly might be brought forward and reasonably given substantial weight in such bargaining").

The fair market value of the Debtor's jewelry here probably falls somewhere between the $5,520 total original cost and the $1,000 liquidation value originally scheduled.  Admittedly, the purchase price differed from Debtor's liquidation value, but not remarkably so.  And the Trustee

has not argued or put forth evidence indicating that the fair market value is significantly greater than the liquidation value. The Court also notes that the Trustee has not alleged that the Debtor intentionally concealed any of the jewelry.

In addition, although a large majority of courts have concluded that property should be listed in a debtor's schedules and valued for exemption purposes at its fair market value, there is at least limited support for the liquidation-value approach the Debtor was told to use on her original schedules. See West, 328 B.R. at 750 n.8 (citing cases and explaining majority and minority approaches). So the Debtor could not reasonably have been expected to know that she was required to use fair market value, rather than liquidation value, in completing her schedules because the advice she was given had some limited support and it was not "transparently plain" that the advice was improper. See id.; Zitwer v. Kelly (In re Kelly), 135 B.R. 459, 462 (Bankr. S.D.N.Y. 1992) ("The defense of reliance on counsel is not available when it is transparently plain that the advice is improper."); see also In re Mascolo, 505 F.2d 274, 277 n.4 (1st Cir. 1974) ("even the advice of counsel is not a defense when it is transparently plain that the property should be scheduled"). Therefore, the Court finds that the Trustee has not met his burden of proving that the Debtor acted in bad faith when scheduling her jewelry.

## IV. CONCLUSION

In summary, the Court holds that: (1) the Debtor's $50,824 disability insurance settlement is property of the estate and the Debtor has not demonstrated an applicable exemption or exclusion for the settlement proceeds; and (2) the Trustee did not demonstrate that the Debtor acted in bad faith when scheduling her jewelry by using a liquidation-value approach because

she at least had some reasonable basis for doing so.  Thus, the Court will sustain the Objection as to the Debtor's exemption for the disability insurance settlement and overrule the Objection as to the Debtor's bad faith on scheduling the jewelry.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:   October 14, 2009                    /s/ J. Michael Deasy
                                            J. Michael Deasy
                                            Bankruptcy Judge